Elena Condes  (CBN 169515)
LAW OFFICE OF ELENA CONDES
1010 Grayson Street, Suite Two
Berkeley, California 94710
Tel: (510) 525-4243
Fax: (510) 665-4036
Eml: ec@elenacondes.com


Attorney for Defendant
ROBERTO ACOSTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR-11-00182 CRB |
| Plaintiff, | |
| vs. | DEFENDANT, ROBERTO ACOSTA'S SENTENCING MEMORANDUM AND REQUEST FOR EVIDENTIARY HEARING |
| ROBERTO ACOSTA., | |
| Defendants. | J&S Date: October 19, 2011 |
| | Time: 2:15 p.m. |
| _____/ | Court: Hon. Charles R. Breyer |

Defendant, ROBERTO ACOSTA, was found guilty after a trial of one count of 18 U.S.C.

§ 1001.  Mr. Acosta, by and through counsel, respectfully requests, pursuant to 18 U.S.C.

§3553(a) and *United States v. Booker,* 125 S.Ct. 738 (2005) and *United States v. Fanfan,* that

this Honorable Court impose a sentence of no further time in custody on this case and no

supervised release, a sentence below that proposed by the Probation Officer of twelve months

and one day.   Mr. Acosta has been in custody since February 4, 2011, by the time of Sentencing,

Mr. Acosta will have served 8 months and 6 days (258 actual days).

Defendant, further requests that the hearing be under seal.  As the Court is aware, Mr.

Acosta was an informant working with ICE beginning in 2005 until the date of his arrest in

February 2011.  It is well understood by the Government and the ICE Agents involved in this

case that Mr. Acosta's life is under threat because of his work with the Government and the

1  matters discussed at his sentencing may potentially make that situation worse.

2          Defendant, further intends to present 1-2 witnesses to testify at the sentencing hearing

3  and expects that witness testimony shall last no longer than 45 minutes.

4          Defendant has no objection to the Offense Level calculation of six as stated in the Pre-

5  sentence Report.  The Guideline range for an offense with an Offense Level of 6 and Criminal

6  History of I is 0-6 months.  If Defendant's foreign convictions are considered, his Criminal

7  History Category rises to III and the range is 2-8 months.  The Probation Officer's

8  recommendation of 12-18 months factors in a Criminal History of Category of VI.  The Statutory

9  Maximum sentence for this offense is five years.

10          This case is unique, the defendant, ROBERTO ACOSTA, is unique in his history and the

11  circumstances surrounding the charging of this case against him.   A sentence of no additional

12  time in custody and no supervised release is appropriate for this offense and for this defendant.

13          The following is based on the trial testimony and anticipated testimony during the

14  Sentencing Hearing.

15          **I.        Legal Standard**

16          Ultimately, the Court's obligation under *Booker* is to impose a sentence that is within the

17  statutory range and consistent with the primary directive of Section 3553(a), namely, a sentence

18  that is "*sufficient, but not greater than necessary,*" to comply with the purposes of sentencing as

19  articulated in the statute.  18 U.S.C. §3553(a) (emphasis added).

20          As *U.S. v. Carty*, 520 F.3d 984 (9th Cir. 2008), held, the approach  for sentencing is as

21  follows:

22          •        "The overarching statutory charge for a district court is to "impose a sentence

23                  sufficient, but not greater than necessary" to reflect the seriousness of **the offense**,

24                  promote respect for the law, and provide just punishment: to afford adequate

25                  deterrence; to protect the public; and to provide the defendant with needed

26                  educational or vocational training, medical care, or other correctional treatment.

27                  18 U.S.C. §3553(a) and (a)(2). (emphasis added)

28          •        All sentencing proceedings are to begin by determining the applicable Guidelines

range. The range must be calculated correctly. In this sense, the Guidelines are "the 'starting point and the initial benchmark,'" *Kimbrough*, 128 S.Ct. At 574 (quoting *Gall*, 128 S.Ct. At 596-97 n.6.

- The parties must be given a chance to argue for a sentence they believe is appropriate. [footnote omitted.].

- The district court should then consider the §3553 factors to decide if they support the sentence suggested by the parties, i.e., it should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. 18 U.S.C. §3553(a)(1)-(7); *Gall*, 128 S.Ct. At 596-97 n.6.

- If a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Id*. at 597. This does not mean that the district court's discretion is constrained by distance alone. Rather, the extent of the difference is simply a relevant consideration. At the same time, the Court put it, "[w]e find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id*. This conclusion finds natural support in the structure of §3553(a), for the greater the variance, the more persuasive the justification will likely be because other values reflected in §3553(a) - such as, for example, unwarranted disparity - may figure more heavily in the balance. ......" *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008).

**II.     Case Background**

Mr. Acosta became an Informant for the Immigration and Customs Enforcement (ICE)

1   Agency following an arrest in San Francisco in 2005.  The ICE agents that Mr. Acosta began

2   working with, Agent Christopher Merendino quickly learned about Mr.Acosta's life in Honduras

3   and his participation in the Mara Salvatrucha there.  Agent Merendino realized the benefit of

4   gaining Mr. Acosta as an informant and having him infiltrate the MS-13 gang here in San

5   Francisco and so began the six year relationship between Mr. Acosta and ICE.   As time went on,

6   Mr. Acosta began working with ICE Agent John Moore.  Agent Moore worked closely with Mr.

7   Acosta for countless hours those few years before the first arrests were made in 2008 as a result

8   of the work done by Mr. Acosta.  Mr. Acosta was the primary source that led to 42-45

9   indictments and arrests of known gang members in San Francisco.

10          As the working relationship evolved, Mr. Acosta was questioned further about his history

11   before coming to the United States and his short history before becoming an ICE informant in

12   2005.  He was formally questioned again in 2008 where more details of his past in Honduras

13   were revealed.  From 2008 to 2011 Mr. Acosta was still working endlessly with ICE going

14   through the mountains of evidence obtained during his time as an informant in anticipation of the

15   trial against the San Francisco gang members.   During the questioning in 2008, ICE and the

16   Government received information from Mr. Acosta regarding his involvement in a few murders

17   of Bus Drivers in Honduras.  From testimony in the trial in this case, we learned that the Agents

18   and Government attorneys asked Mr. Acosta if he had been involved in any other murders and

19   were told, "no."  Later, in February 2011, ICE agents asked Mr. Acosta to tell them his entire

20   history - everything he had been involved in - and his involvement in other murders was

21   revealed.  Two days later Mr. Acosta was charged with making a false statement, the charge in

22   this case.

23          While Agent Merendino testified in Mr. Acosta's trial that he wouldn't have used Mr.

24   Acosta if he had known his entire criminal history at the beginning, the fact remains that at every

25   juncture when new information was revealed about Mr. Acosta's past he was still used as an

26   informant and considered a potential witness in the larger MS-13 gang trial.  Even after he was

27   arrested and charged in this case, he was still being considered as a witness in the impending

28   MS-13 trials.

1    The Government has not been able to independently verify the information provided to

2    them by Mr. Acosta.  However, much time was spent in the trial describing the circumstances of

3    the murders in Honduras.  Here, as in the trial in this matter, the facts related to those events

4    should not be the focus here.  The culpability for the offense charged here arises essentially

5    because of the timing of the disclosure, not the subject of the disclosure.  The facts of this case

6    are what should be considered in determining an appropriate sentence.

7    **III.    Roberto Acosta's History and Characteristics**

8    In Honduras, Mr. Acosta began associating with the Mara Salvatrucha when he was

9    fourteen years old.  The Mara was more of club or group of friends. By the late 1990's 18th Street

10   members of a Los Angeles based gang began being deported to San Pedro Sula and violence

11   between the two gangs escalated in Honduras.  Mr. Acosta became the leader of his clique in San

12   Pedro Sula.

13   His involvement with the Mara resulted in Mr. Acosta suffering brutal attacks upon

14   himself and engaging in violence himself.  Mr. Acosta rose the position of treasurer and was

15   suspected to have mishandled the funds of gang.  In late 2004, as a result of the mishandling of

16   the money, Mr. Acosta was "green lighted" meaning an order had been placed for him to be

17   killed.  He then found himself in a position of being ordered to kill his pregnant wife and her

18   brother or, be killed himself.  It was then that he fled his town and made plans to leave

19   Honduras.   Before he could make his way out, the gang killed his father and his friend.  While

20   he was hiding at his mother's house the gang found him and killed his teenaged brother and

21   sister in front of him.

22   After his wife gave birth to their child, Mr. Acosta and his wife left Honduras and arrived

23   in the United States in December of that year.  He arrived in San Francisco in approximately

24   January of 2005.  By mid 2005, Mr. Acosta was in ICE custody and began his work as an

25   informant for ICE.

26   Mr. Acosta was committed to getting out of the gang and in 2006 began the process of

27   having tattoos removed.  He had a couple of tattoos removed from his ears and left the remaining

28   tattoos to continue his work as an informant.  Mr. Acosta worked in restaurants in San Francisco

1   while he was working with ICE until the demands of the informant work caused him to leave his

2   job.  Other than the time when Mr. Acosta was deported back to Honduras in 2006 he worked

3   continuously with ICE from 2005 until his arrest in 2011.

4       Mr. Acosta's mother, child and siblings of his wife were relocated to the Bay Area after

5   the Government learned of threats against them resulting from the arrests and indictments in the

6   MS-13 case.

7       Since he been in the United States, Mr. Acosta and his wife had two more children.

8   Before his arrest he was living with his wife and three children.

9           **a)    Mr. Acosta's Criminal History Category Should Not Exceed Level III.**

10      Mr. Acosta's Criminal History Category should not exceed Level III because he does not

11  have the criminal convictions necessary for an increase beyond that Level.  Mr. Acosta suffered

12  a robbery conviction with a sentence of more than one year and a conviction for possession of a

13  dangerous weapon resulting in a sentence of an unknown length.

14      The Pre-sentence Report indicates that the increase to Category VI is appropriate because

15  the actual Criminal History Category is under represented.  However, in this case, Mr. Acosta's

16  criminal activity has not been verified.  In fact, ICE agents had determined that there is "very

17  little" or "no evidence" to prove the crimes that are alleged to have occurred in Honduras against

18  Honduran nationals.  Mr. Acosta would suffer the consequences as if he had been charged, had

19  an opportunity to defend and was then convicted of the crimes alleged.   Accordingly, Mr.

20  Acosta's Criminal History should not be increased to Level VI.

21

22          **b)    Mr. Acosta's Assistance to the Government Should be Considered in
                    This Case.**

23      Mr. Acosta's assistance to the ICE Agents and the Government in the prosecution of the

24  MS-13 cases should be considered in his sentencing.  Mr. Acosta was the "primary source" for

25  the information that led to the 42-45 arrests and indictments in the MS-13 cases.  Many guns

26  were removed from the streets in San Francisco, murders were solved and avoided because of

27  the information that Mr. Acosta provided for ICE and the Government.

28      Even though the Government chose not to use Mr. Acosta as a witness in the first MS-13

1  trial, much of his work was still used in that trial.  In fact, in the most recent trial only one of the

2  defendant's was not convicted in that case.

3          Mr. Acosta's admissions to the ICE Agents and the Government were made during the

4  course of preparation for the MS-13 trial.  Mr. Acosta was willing and doing everything

5  necessary to prepare for the trial and his potential testimony in it.   The overwhelming assistance

6  to the Government provided by Mr. Acosta should be considered by the Court in determining the

7  sentence.

8          **IV.    Conclusion**

9          A sentence of 8 months and 6 days is a sentence sufficient, but not greater than

10  necessary" to reflect the seriousness of **this offense.**  Clearly Mr. Acosta has exhibited respect

11  for the law in his diligent and thorough work for ICE and Government Agents.  Mr. Acosta's

12  proposed sentence will provide a just punishment.  Mr. Acosta is not at risk to return to criminal

13  activity.  Mr. Acosta sought and acquired work while he was working for the Governement.  He

14  has lived a peaceful life since 2005 and as Agent Moore testified to in this trial, this transition

15  has been somewhat of a rebirth for Mr. Acosta.

16          A sentence in excess of Mr. Acosta's proposed sentence is not necessary to protect the

17  public because so much of the work Mr. Acosta did as an informant with ICE did just that.

18          Accordingly, Mr. Acosta respectfully requests that the Court sentence him to time served

19  (8 months and 6 days) with no Supervised Release or, if the Court deems necessary, one year of

20  Supervised Release.

21

22  Dated: October 11, 2011                              Respectfully Submitted,

23                                                       LAW OFFICES OF ELENA CONDES

24

25                                                       _____/S/_____

26                                                       Elena Condes, Attorney for
                                                         Defendant, Roberto Acosta

27

28

Defendant's Sent. Memo and Req. For Evid. Hrg.          7